IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Trevee Gethers, ) | CIVIL ACTION NO. 9:08-3483-HFF-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Captain T. A. Van Doran, Lt. Carmichael, ) | |
| Lt. Heyward, Sgt Debello and Pfc. Ezel, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, who is incarcerated at the Dorchester County Detention Center, alleges violations of his constitutional rights by the named Defendants, all employees of the Detention Center.

The Defendants filed a motion for summary judgement pursuant to Rule 56, Fed.R.Civ.P. on June 15, 2009. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on June 16, 2009, advising Plaintiff of the importance of a motion summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to adequately respond, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion on July 2, 2009, following which the Defendants filed a reply memorandum on July 6, 2009.

1



Defendants' motion is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified complaint[2] that he has been incarcerated at the Dorchester County Detention Center since September 22, 2007, where he has been "subjected to negligence" by "staff". Plaintiff alleges that on one occasion, he requested to see the nurse "through an [unidentified] officer", but because his request was not timely relayed he had to suffer "a 102.0 degree fever for three days before they thought I was sick enough to see the nurse." Plaintiff also complains that the "room[s]" are provided with intercoms, but that a lot of the buttons do not work and it is therefore hard to ever get assistance from officers except when "they do their rounds".

Plaintiff also complains that an inmate handbook is issued to every inmate which sets forth the code of conduct for both inmates and staff, but that he has been told by officers that they don't comply with the handbook. Plaintiff alleges that the Detention Center is run by Defendant Van Doran, and that he has written multiple requests and grievances to Van Doran requesting to speak to him about the "cruel and inhumane treatment" inmates receive, but that he has never spoken to him or gotten a reply back from him. Plaintiff also alleges that he was placed in segregation "lock up" for unspecified charges, resulting in a loss of privileges such as being able to watch television

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



or have recreation every day. Plaintiff alleges that he posed no kind of threat or broke any rules, and should not have been subjected to the rules imposed in the lock-up. Plaintiff specifically complains that he is required to wear leg shackles when he is out of his cell and when he goes to the visitation room to visit his family. Plaintiff alleges that other inmates, who are not in segregation, are not required to wear leg shackles in the visitation room, which puts him at a disadvantage if there was a fight.

Plaintiff also complains that inmates in segregation are not allowed radios or newspapers, are only allowed to take a shower every other day, and that on the days they don't shower they "get recreation which is 3 hours a week." Plaintiff also complains that the mattresses inmates are required to sleep on are only three inches deep, and that almost every morning he wakes up with back pain. Plaintiff alleges that maximum security is used for nothing more than punishment of inmates, and that other than inmates charged with disciplinary infractions, the only time an inmate is placed in segregation is if they have a serious criminal charge like his (apparently murder). Plaintiff notes that he has not yet been convicted of this charge.

Plaintiff alleges that he has witnesses who saw the Defendant Ezel use excessive force on an inmate for no reason, and that Ezel has also "racially insulted" him. Finally, Plaintiff complains that inmates in segregation are being deprived of "nutrients", because everybody else in the jail gets apples for lunch except the inmates in segregation. Plaintiff complains that they feed the inmates in segregation two sandwiches and a cake for lunch.

Plaintiff has attached copies of two inmate request forms, as well as an inmate grievance form, to his complaint. Plaintiff seeks both monetary damages and injunctive relief. See generally Verified Complaint.



In support of summary judgment in the case, the Defendants have provided a copy of the Detention Center Inmate Handbook and Code of Conduct, which sets out the policies and procedures of the Detention Center. Each Defendant has also provided an affidavit, wherein the Defendants attest that on numerous occasions since being incarcerated, the Plaintiff has been placed in maximum security lockdown due to multiple disciplinary infractions, including smoking cigarettes (possession of contraband), masturbation, indecent exposure, and destroying county property. Defendants also attests that Plaintiff has been provided the same opportunity to watch television as other inmates who are housed in the Plaintiff's cellblock, and that throughout his stay at the Detention Center Plaintiff has been provided the same opportunity to enjoy outdoor exercise activities as other inmates housed in his cellblock. Defendants further attest that, in the event outdoor exercise activities are not available, Plaintiff is afforded the opportunity to engage in indoor exercise activities. Defendants attest that, like every inmate housed at the Detention Center, Plaintiff is not allowed to possess a newspaper or newspaper clippings because these items could contain drugs. See generally Defendants' Affidavits.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a

4



complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

The Eighth Amendment is used to evaluate conditions of confinement only for those convicted of crimes. Therefore, as a pretrial detainee during the time period set forth in the Complaint [from the allegations of the Complaint, Plaintiff is being held at the Detention Center awaiting trial on a murder charge], Plaintiff's conditions of confinement are evaluated under the due process clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535, n.16 (1979); Ingraham v. Wright, 430 U.S. 651, 671-672, n.40 (1977); Gray v. Farley, 13 F.3d 142, 146 (4th Cir. 1993); Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987). Under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. Bell, 441 U.S. at 535.

However, the mere fact that a detainee may be held in uncomfortable surroundings does not constitute "punishment" for purposes of a § 1983 claim. Jails are not luxury hotels. Martin v. Tyson, 845 F.2d 1451, 1457 (7th Cir. 1988)[Where pretrial detainee was complaining about physical conditions, the Court held " . . . county jail is a small, rural jail, and jails do not have to duplicate the amenities of small, rural hotels."]. The question is whether the evidence presented to the Court shows that Plaintiff was denied the minimal civilized measure of life's necessities, or that the Defendants engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm [would] result." Farmer v. Brennan, 114 S.Ct. 1970, 1978-1979 (1994); Wilson v. Seiter,

5



501 U.S. 294, 298 (1991); see Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988) [holding that the Fourteenth Amendment guarantees at least Eighth Amendment protections]. No such evidence has been presented in this case.

First, Plaintiff himself describes the Defendants' alleged improper conduct as having being committed through "negligence". That is not the standard for liability for a constitutional claim being asserted under § 1983. Rather, the standard is one of deliberate indifference. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999)["Deliberate indifference is a very high standard - a showing of mere negligence will not meet it."]; A.P. ex rel. Bazerman v. Feaver, No. 04-15645, 2008 WL 3870697 at *12 (11th Cir. Aug. 21, 2008)["[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence . . . ."]. Hence, while Plaintiff could pursue a negligence claim against the Defendants in state court, he cannot pursue such a claim in a § 1983 case in federal court. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care].

Further, even if Plaintiff had not himself asserted that his claims arise in negligence, he has failed to provide evidence sufficient to give rise to a genuine issue of fact as to the merits of any of his claims, thereby entitling the Defendants to summary judgment. With respect to Plaintiff's claim that the Defendant Van Doren (a Captain at the Detention Center) failed to properly respond to his requests and grievances, the copies of the Inmate Request Forms/Grievance Form attached to Plaintiff's complaint (the only evidence submitted by the Plaintiff) show timely responses by jail authorities to Plaintiff's requests/complaints. In any event, to the extent Plaintiff is complaining



about the grievance system, this is not a claim cognizable under § 1983, as there is no constitutional right to access to a prison grievance procedure. See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) [existence of a prison grievance procedure does not confer any substantive right upon inmates]; Brown v. Dodson, 863 F.Supp. 284 (W.D.Va. 1994) [inmates do not have a constitutionally protected right to a grievance procedure]; Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982) [even where a state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights. Therefore, a state's failure to follow its grievance procedures does not give rise to a § 1983 claim]; Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.Mo. 1986) [holding that an inmate grievance procedure is not constitutionally required]; see also McGuire v. Forr, No. 94-6884, 1996 WL 131130, at *1 (E.D.Pa. March 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996) [creation of a grievance system by a state does not create any federal constitutional rights, as prisoners are not constitutionally entitled to a grievance procedure]; Moore v. Sergent, No. 01-1271, 2001 WL 1355298 (6th Cir. Oct. 26, 2001); cf. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) [prison officials may place reasonable limits on prisoner's access to grievance procedure]. Therefore, any such claim is subject to dismissal.

The remainder of Plaintiff's assertions are essentially a hodgepodge of varying conclusory claims, allegations and complaints about the unpleasantness of jail life. However, Plaintiff has failed to present any actual evidence to establish a conditions of confinement claim with respect to any of these issues. See generally, Strickler v. Waters, 989 F.2d 1375, 1379, 1381 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). In order to show that any named Defendant violated his constitutional rights, Plaintiff must show not

7



only that the deprivation alleged was "objectively significantly serious", but that the Defendant acted with a "sufficiently culpable state of mind". Shakka, 71 F.3d at 166 [in order to state a constitutional violation, the deprivation alleged must not only be "objectively significantly serious", but the Defendant must also have acted with a "sufficiently culpable state of mind"]; Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998), (citing Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)); see also Farmer, 114 S.Ct. at 1979 [A defendant must have engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; Olsen v. Layton Hills Mall, 312 F.3d 1304, 1315 (10th Cir. 2002)["Although '[p]retrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, . . . this Court applies an analysis identical to those applied in Eighth Amendment cases brought pursuant to 1983."] (quoting Lopez v. LeMaster, 172 F.3d 756, 759 n. 2 (10th Cir. 1999)); Pruitt v. Moore, No. 02-395, 2003 WL 23851094 at *9 (D.S.C. July 7, 2003) [only deliberate or callous indifference on the part of prison officials to a specific known risk of harm states a constitutional claim], cert. denied, 2004 WL 232748 (4th Cir. 2004); Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"]. Plaintiff has failed to present any such evidence, and in fact fails to even mention many of the Defendants in the narrative of his complaint.

Plaintiff's allegation about the intercom boxes, even assumed to be true, does not set forth any claim of a constitutional magnitude. Plaintiff does not even allege that he has suffered any harm as a result of the poor condition and/or quality of these intercom boxes. Cf. Wilson v. Cook County Bd. of Commissioners, 878 F.Supp. 1163, 1167-1168 (N.D.Ill. 1995) [pretrial detainee failed

8



to establish that conditions in detention facility violated his due process rights, as detainee failed to allege remedial injury]. Plaintiff's claim that unnamed Dorchester County "staff" were negligent because he was not allowed to see a nurse until he had been suffering from a fever for three days is, standing alone and without any supporting evidence, also insufficient to state a constitutional claim. As previously discussed, negligent conduct is not sufficient to proceed with a claim under § 1983. See Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]; Grayson, 195 F.3d at 695 ["Deliberate indifference is a very high standard - a showing of mere negligence will not meet it."]. Rather, in order to proceed with this claim under § 1983 for denial of medical care, Plaintiff must present *evidence* sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer, 511 U.S. 825, 837; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). Here, Plaintiff has presented no evidence to show that any named Defendant was deliberately indifferent to any serious medical need. Plaintiff only generally alleges in his complaint that he had a fever and should have been taken to see a nurse for this fever quicker than he was. However, Plaintiff's own self serving opinion that he should have been provided more rapid or extensive medical care than he received, even assuming his conclusory claim that he was suffering from a fever to be true, is not sufficient by itself to survive summary judgment on a claim of a violation of his *constitutional rights*, particularly in light of the fact that he has presented no medical opinions or evidence to support his claim or to show that he received inadequate treatment, or that he suffered any harm as a result. See Scheckells v. Goord, 423 F.Supp.



2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; cf. Estelle, 429 U.S. at 106 ["Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"]; see also Norman, v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994) (enbanc) [De minimus injury does not state a constitutional claim]; Thaddeus-X v. Wozniak, 2000 WL 712383, at * 3 (6th Cir. May 23, 2000) [Plaintiff must show he suffered more than de minimus injury].

As for Plaintiff's claim that he has suffered a loss of certain privileges, such as having no television to watch or everyday recreation, due to his having been placed in maximum security, this general and conclusory allegation again fails to provide any evidence of a constitutional violation. Plaintiff has no constitutional right to placement in any particular custody classification. Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."]. Further, not only do all of the Defendants attest that Plaintiff has been placed in maximum security lock down on numerous



occasions due to multiple disciplinary infractions, but Plaintiff himself concedes in his memorandum opposing summary judgment that "[s]ince I have been here, yes, I have been found guilty of infractions . . . .". Plaintiff's Memorandum in Opposition, p. 2. Indeed, Plaintiff appears to also concede that the detention facility may be justified in placing him in maximum security due to the nature of his underlying charges (murder), arguing that "[e]ven if prison officials feel we must be segregated because of our charges, that I feel like we should have access to the television and the same amount of recreation as the general population." Plaintiff Memorandum in Opposition, pp. 1-2. See Alexander v. Frank, No. 91-35587, 1992 WL 149679 at * 1 (9th Cir. June 30, 1992) [Pretrial detainee not denied due process or equal protection or subjected to cruel and unusual punishment when he was placed in maximum security/maximum custody due to specific factors based on a legitimate government purpose of ensuring the safety and security of the prison facility.].

However, while Plaintiff would no doubt like to be treated the same as inmates in the general population, with the same privileges, the reason prisoners are segregated from the general population and placed in maximum security is because they are considered too dangerous to be in the general population and need more stringent conditions of confinement. This Court can take judicial notice that such restrictions typically include inmates being required to wear restraining devices when out of their cells, being kept in bare rooms to lessen the possibility of contraband and "acting out" behavior, and other types of similar restrictions. See generally Sweet v. South Carolina Department of Corrections, 529 F.2d 854, 859 (4th Cir. 1975) (en banc) [describing federal court's deference to prison administrators and all administrative matters unless the condition rises to the level of a constitutional violation]; Ruiz v. El Paso Processing Center, No. 07-204, 2007 WL. 2815577 at * 2 (W.D.Tex. Sept. 18, 2007)[Pretrial detainee had "no protectable property or liberty

11



interest in custodial classification."]; Case v. Hansen, No. 05-2073, 2007 WL 1430106 at * 7 (W.D.Wash. May 14, 2007)[Noting that restrictions contested by pretrial detainee, "including lock down for extensive time periods and in-cell meals, appear reasonably related to the legitimate purpose of maintaining security, safety, and order, and do not appear to significantly exceed the inherent discomforts of confinement."]; Chilocote v. Mitchell, 166 F.Supp. 2d 1313, 1318 (D.Or. 2001)[confinement of pretrial detainees in cramped, triple-bunked cells for 20 to 21 hours a day did not rise to the level of a constitutional violation in the face of the population-based needs and security concerns.].

Defendants all attest that Plaintiff is treated no differently than any other inmate of his security classification, which Plaintiff has not contested in his response. Plaintiff's general and conclusory allegations about the conditions of his confinement in lock-up, including the nature of his food, his alleged lack of outdoor exercise, and the other complaints are simply insufficient standing alone without any supporting evidence to create a genuine issue of fact as to whether his constitutional rights have been violated. House v. New Castle Co., 824 F.Supp. 477, 485 (D.M.D. 1993)[Plaintiff's conclusory allegations insufficient to maintain claim]; Wilson, 878 F.Supp. at 1167-1168 [pretrial detainee failed to establish that conditions in detention facility violated his due process rights, as detainee failed to allege remedial injury]; see also Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; Harris v. Fleming, 839 F.2d at 1232, 1235 (7th Cir. 1988)[prisoner deprived of toilet paper, soap, toothpaste and toothbrush while kept in filthy, roach infested cell suffered no punishment when no physical harm resulted]; Chavis v. Fairman, No. 94-1503, 1995 WL 156599 at **5-6 (7th Cir. Apr. 6, 1995)["Generally, even


dramatic restrictions on outdoor exercise do not violate the Eighth Amendment . . . so long as prisoners have ample opportunity to enjoy indoor activity."]; Stewart v. McGinnis, No. 94-1503, 1995 WL 156599 at * 5 (N.D.Ill. Apr. 6, 1992)[although inmates were not permitted to exercise outdoors during an 85-day lock down period, they were allowed to leave their cells, use the day room, and generally move about the prison, thus undercutting Plaintiff's constitutional claims], aff'd, 5 F.3d 1031 (7th Cir. 1993); Farmer, 114 S.Ct. 1979 [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; Kidwell v. Buchanan, No. 93-15056, 1993 WL 230224 at **1 (9th Cir. June 29, 1993) [Where temporary restriction of amenities was found not to be cruel and unusual punishment]; Harris v. Murray, 761 F.Supp. 409, 415 (E.D.Va. 1990) ["Plaintiff does not state a constitutional claim for inadequate nutrition merely because there were occasions when plaintiff considered his food inedible or inadequately warmed."]; Waring v. Meachum, 175 F. Supp.2d 230, 239 (D.Conn. 2001) [cold diet without fruits and vegetables for a short time period not a constitutional violation]; *cf.* Rust v. Grammar, 858 F.2d 411, 414 (8th Cir. 1988) [where "sandwich diet was imposed for a short time, with no resultant long-term adverse effects, it was a constitutionally permissible response to a disruptive situation"].

Finally, Plaintiff's assertion that excessive force was used against another inmate on his cell block does not state a claim, as Plaintiff cannot assert the rights of other inmates. Inmates v. Sheriff Owens, 561 F.2d 560, 562-63 (4th Cir. 1977) [one inmate does not have standing to sue on behalf of another inmate]; Hummer v. Dalton, 657 F.2d 621, 625-26 (4th Cir. 1981) [a prisoner cannot act as a "knight-errant" for others]. As for Plaintiff's claim that the Defendant Ezel "racially

13



insulted" him, it is well settled that the use of vile and abusive language is never a basis for civil rights action. Malsh v. Austin, 901 F.Supp. 757, 763 (S.D.N.Y. 1995); Sluys v. Gribetz, 842 F.Supp. 764, 765 n.1 (S.D.N.Y. 1994) affmd., Sluys v. Gribetz, 41 F.3d 1503 (2d Cir. 1994); see also Batista v. Rodriguez, 702 F.2d 393, 398 (2d Cir. 1985); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997). Therefore, these claims are without merit, and should be dismissed.

## **Conclusion**

Based on the foregoing, it is recommended that the Defendants' Motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 11, 2009

Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

